## Case No. 12,142.

### RUSCH v. DES MOINES COUNTY.

[Woolw. 313.] [1]

Circuit Court, D. Iowa. Oct. Term, 1868.

MANDAMUS—UNDER IOWA CODE—TAXATION—PROCEEDINGS TO ENFORCE LEVY—HOW LEVY TO BE MADE.

1. The chapter on the "action by mandamus," of the Revised Code of Iowa, changes the character of the writ to an action for the enforcing of any right to which it may be applicable.

2. This chapter has never been adopted by this court, as a rule of practice, and can have no force here.

---

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

3. This court, in applications for mandamus, has always proceeded according to the course of the common law.

4. Proceedings to enforce levy and collection of a tax should not be by appointment of commissioners.

5. Even under Iowa statute the aforesaid chapter does not authorize an order appointing a special commissioner to levy a tax upon a county, whose officers have, in disobedience to the command of a mandamus, neglected to levy a tax, to raise money to pay a judgment.

6. This chapter extends the remedy only to compel the performance of a duty, the breach of which is followed by damages.

7. The court should not appoint a person to discharge the official duties of an officer, whose appointment, functions, and qualifications are prescribed by law.

8. The application for the appointment of a commissioner to levy the tax is addressed to the discretion of the court, and will be declined on account of the difficulties attending it.

9. The county treasurer, whose sole duty it is to collect the tax, has never refused to perform his duty, and it cannot be assumed that he will do so. He has most important and delicate duties to perform in enforcing the tax. He should not be displaced by a court.

10. The assessors are not in default. They should not be displaced. Were the commissioner to attempt to levy the tax upon their last valuation of property, he would be powerless to compel the records of that assessment from the officer who had been summarily removed.

11. If the statute of Iowa confers such power, it is in conflict with the constitution of that state. That constitution declares that the three departments, the legislative, the executive, and the judicial, shall each be kept separate from either of the others. It also provides that no local or special law shall be passed relative to taxes.

The plaintiff having recovered a judgment at law against the county, applied to the court for a mandamus, directed to the supervisors, commanding them to levy a tax for the purpose of raising the money to pay the judgment. The supervisors made a return to the writ, setting forth matters by which they sought to excuse their disobedience of the order of the court. This return was quashed as insufficient in law, and the question presented itself, how they should be dealt with, and how the court should compel the levy of the tax? The relator moved the court to appoint George W. Clark, the marshal of the district, a commissioner to levy and collect the tax.

Mr. Rorer, Mr. Howell, and Mr. Edmunds, in support of the motion.

Mr. Tracey, contra.

MILLER, Circuit Justice. In this case, a peremptory mandamus was ordered at the last term of the court, directed to the defendants, commanding them to levy a tax sufficient to pay the debt of the relator. This mandate has not been obeyed, though the marshal's return shows that it was duly served upon the supervisors. Instead of levying a tax, they have made a return, which attempts to show matters in excuse for not complying with the command

of the writ. This return has been quashed, on the relator's motion, as insufficient in law.

The relator now moves the court to appoint Clark, the marshal of the district, a commissioner, with directions or orders to levy and collect a tax sufficient to answer the debt due to the relator, and to pay to him the amount of his debt, interest, and costs.

This motion has been fully argued by three eminent counsel in support thereof. I do not understand either of them to base it upon any common law power of the court to invade the legislative function of levying taxes. On the contrary, it is based by all the counsel solely on section 3770 of the Iowa Statutes (Revision of 1860). I believe it to be conceded, also, that it is optional with the court whether it will make this order, or will proceed by process of attachment to compel the supervisors to obey the mandate heretofore issued to them. The section referred to is a part of chapter 153 of the Revision, which chapter is headed in capitals "Action of Mandamus." This chapter is one introduced by the codifiers, and was new to our statutes. It changes the character of the writ of mandamus in many features, and makes it essentially an action for the enforcement of any right, to which, by its nature, it is applicable. It is no longer limited to cases in which there is no other remedy. Section 3767 provides, that the plaintiff in any action, except those of replevin, detinue, and to recover possession of real estate, "may also in aid of such cause of action, pray and have a writ of mandamus to compel the performance of a duty established in such action."

This chapter has never been adopted by this court as one of its rules of practice. So far, therefore, as the right to the order asked for is dependent upon the rules of practice governing this court, it can receive no aid from this provision of the statute. Pomeroy v. Manin [Case No. 11,261]; Catherwood v. Gapete [Id. 2,513]. The Revision of 1860 was passed by the legislature of Iowa long after any act of congress adopting the laws of the state as rules of practice in the federal courts; and when this court was established in 1862, the judges, in framing rules for the practice of the court, most of which were adopted from the revision of Iowa statutes, excluded all that related to the writ of mandamus. Accordingly, in applications for mandamus, we have proceeded in the usual common law mode by information and alternative writ in the first instance, instead of by petition, answer, and judgment prescribed in the statute. And the supreme court, in its several judgments, made in this class of cases at its last term, after a full review of the acts of congress concerning the practice of the courts, reached the conclusion that the issuing of the writ of mandamus was to be according to the common law forms, and in virtue of the inherent power of the court. Riggs v. Johnson Co., 6 Wall. [73 U. S.] 166. If the section under which this order is asked for, and which, at the

most, is a mere rule of practice, has never been adopted by this court, nor by any law of congress, it can have no force here. Smith v. Cockrill, Id. 756.

But waiving this consideration, let us examine the language of the section on which this extraordinary power is claimed to rest. It reads as follows: "The court may, upon application of the plaintiff, besides, or instead of proceeding against the defendant by attachment, direct that the act required to be done, may be done by the plaintiff, or some other person appointed by the court, at the expense of the defendant, and upon the act being done, the amount of such expense may be ascertained by the court, or by a reference appointed by the court, as the court or judge may order, and the court may render judgment for the amount of such expenses and costs, and enforce payment thereof by execution."

We are of opinion, upon a fair and reasonable construction of this statute: 1. That it is inapplicable to such an order as the one now asked for. 2. That, if it could be held to apply to such a case as the one before us. it vests in the court a choice as to which of two modes of enforcing its judgment it will adopt; namely, attachment and imprisonment of defendants, or the appointment of a commissioner to do the acts required of defendants. 3. That if the act can be construed as conferring authority on the court to levy taxes by its officer or commissioner, it is unconstitutional.

We have already shown that this chapter on mandamus extends the remedy of that writ to many cases not previously embraced by it. Some of these are cases in which a mere ministerial, or, more strictly, a manual and personal act, not in any sense official, may be required of the party; as, for instance, the making of a deed, the removal of a nuisance, the delivery of property, &c. Section 3767, already referred to, not only shows this, but also takes a distinction between that class of duties and those which are official; for, after providing, as we have seen, for a liberal use of the writ, it adds: "But if such duty, the performance of which is sought to be compelled, is not one resulting from an office, trust, or station, it must be one for the breach of which a legal right to damages is already complete at the commencement of the action, and must also be a duty of which a court of equity would enforce the performance."

In the case of the abatement of a nuisance, the making of a deed, and the delivery of the possession of property, real or personal, we have instances in which courts of equity have been in the habit of enforcing the performance of the duty, and in which they have also acted, when they thought proper, by means of a commissioner appointed for that purpose. There is no reason why the acts to be performed in these cases may not be as well and effectually performed by a

commissioner as by the person whose duty it is to perform them. But in the case of an officer, upon whom exclusively certain public duties have been imposed by law, and whose mode of appointment is fixed thereby; who takes an oath that he will faithfully perform all his official duties, and who is removable from office only in a prescribed manner, there are many reasons why no one else should be appointed to discharge his duties, while he yet remains in office, and more especially why the court should make no such appointment.

The expressions in this section show clearly that the remedy by appointing a commissioner was not considered as applicable to all cases of mandamus. We are of opinion that this is one of a class to which it was never intended to be applied. But if we may, by virtue of this section, proceed to enforce the judgment by the aid of a commissioner, it is very clearly a discretionary power the exercise of which is confided exclusively to the court.

Besides the fact that we do not believe this section applicable to the case before us, another reason which determines us to decline the measure which the plaintiff has proposed, is the serious difficulty attending it. The first and only duty, in the performance of which the supervisors are in default, is the levy of the tax. The duty of collecting the tax when levied, is, by law, devolved on the treasurer of the county. This officer has never refused to perform any duty. No tax has been levied for the plaintiff's benefit which he could collect. He is, therefore, in no default; he has neglected no duty; he has not been required by the order of this court, nor even asked by the plaintiff, to perform any. Shall we then assume in advance that he will refuse, and appoint some one in his place? The duties of his office are too important, and too well defined by law, to justify a court in substituting any· one in his stead, when there is no charge against him, and no pretence that he has done, or intended to do, any wrong. It is his duty to enforce the payment of the tax, first by sale of the personal property, if necessary, and next by sale of the real estate of the owner. He is also to make a deed to the purchaser, if land sold is not redeemed within three years from the day of sale. This deed is the title on which the purchaser relies. Surely an officer charged with powers which, without a trial in court, deprive one man of the title to land, and confer it on another, should not be displaced, and all his functions transferred, when he has failed to discharge no one of his appropriate duties.

Again, the tax must be levied on some valuation. Will the commissioner appointed by the court make a new valuation for himself? The assessors appointed by law have never failed to make such a valuation, and are in no default. Will the commissioner make his levy on the basis of the valuation already made? How will he obtain access to that valuation? It is under control of officers of the law, over whom he has no authority, and who will not be likely to render him any assistance in his assumption of the exercise of their functions. In short, to do what this motion asks of us, would be, by one despotic act of power, because the board of supervisors have failed in the one duty of making a levy for the benefit of this plaintiff, to supersede the treasurer, clerk, assessors, and perhaps other officers, and to disregard and overturn all the provisions of law for the levy, assessment, and collection of taxes.

But if we could see in the provision of the statute an intention to confer this extraordinary power on the court, we are of opinion that it is in violation of the constitution of Iowa.

That instrument declares (article 3, § 1): "The powers of the government of Iowa shall be divided into three separate departments,—the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

That the authorizing of taxes is a function peculiarly and exclusively legislative, will hardly at this day be disputed among people of Anglo-Saxon institutions. Charles I. lost his head in ·vain, and Hampden and his associates resisted in vain, if the taxing power exists, among their descendants, in any other than a representative body. And though the primary legislative body of the state may confide a portion of that power to other bodies of similar character, this has not been established without a struggle. The great increase of corruptions in municipal bodies, growing out of the ability to create, by taxation, a fund which may be squandered, has made many thinking men doubt the wisdom of endowing them with the power.

The constitution of Iowa (article 3, § 31) has provided, as a further safeguard on this subject, that no local or special law shall be passed by the general assembly, for the assessment and collection of taxes for state, county, or road purposes.

What is it we are asked to do in this case? We are asked to set aside, in Des Moines county, the statute which confides to the supervisors exclusively the right to assess a county tax, and to assess such tax ourselves by our commissioner; to repeal the general law which makes the treasurer the only tax collector, and enact a special law by appointing our agent to sell the lands, make the deeds, and transfer the property of citizens under cover of the taxing power. And who are we, who, in the exercise of the assumed taxing power of the state of Iowa, are thus to levy and collect taxes, and, for their

non-payment, without giving the owners a day in court, to sell lands and divest titles?

In other times, when the functions and relations of the different departments of government were not so well defined and understood as they are now, the executive, invading the province of the legislature, usurped this power of levying taxes. It was never heard, even in those times, that the courts of law arrogated any such power to themselves. Rather were they the refuge of the Hampdens from the oppressions of the kings. If we grant this motion, we shall simply emulate the example, and we shall deserve the fate, of Charles.

Besides, we are the judiciary established by the federal government. We do not hold our commission from the state; nor do we sit generally to administer or construe her laws; nor are we amenable to her government. We being thus, in a measure, an authority foreign to her, are asked to invade her own proper and exclusive jurisdiction; not merely to act upon her officers by judicial process, a proceeding of which I have elsewhere expressed my views, but to assume the functions of her legislature, and, in a matter which most nearly touches the liberty of her people, overturn her laws and subvert her institutions. We must decline to do this. Motion overruled.

As to final process, Ross v. Duval, 13 Pet. [38 U. S.] 45; U. S. v. Knight [Case No. 15,-539] Id., 14 Pet. [39 U. S.] 301; Amis v. Smith, 16 Pet. [41 U. S.] 303; In re Hopkins [Case No. 6,683].